IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

UNITED STATES OF
AMERICA

v.

RYAN SCOTT HARRIS.

CRIMINAL ACTION FILE
NO. 4:11-CR-18-01-HLM

## ORDER

This case is before the Court on Defendant's Motion to Suppress Statements [13], on the Non-Final Report and Recommendation of United States Magistrate Judge Walter E. Johnson [22], and on Defendant's Objections to the Report and Recommendation [24].

## I. Standard of Review for a Report and Recommendation

28 U.S.C.A. § 636(b)(1) requires that in reviewing a magistrate judge's report and recommendation, the district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C.A. § 636(b)(1). The Court therefore must conduct a de novo review if a party files "a proper, specific objection" to a factual finding contained in the report and recommendation. Macort v. Prem, Inc., 208 F. App'x 781, 784 (11th Cir. 2006); Jeffrey S. by Ernest S. v. State Bd. of Educ., 896 F.2d 507, 513 (11th Cir. 1990); United States v. Gaddy, 894 F.2d 1307, 1315 (11th Cir. 1990); LoConte v. Dugger, 847 F.2d 745, 750 (11th Cir. 1988). If no party files a timely

AO 72A
Rev.8/82)

objection to a factual finding in the report and recommendation, the Court reviews that finding for clear error. <u>Macort</u>, 208 F. App'x at 784. Legal conclusions, of course, are subject to de novo review regardless of whether a party specifically objects. <u>United States v. Keel</u>, 164 F. App'x 958, 961 (11th Cir. 2006); <u>United States v. Warren</u>, 687 F.2d 347, 347 (11th Cir. 1982).

## II.  Background

### A.  Factual Background

#### 1.  Traffic Stop and Initial Questioning

On the morning of January 27, 2011, Jake Sutton, who was then employed as a police officer by the City of Adairsville Police Department, was on patrol in a marked police cruiser within the Adairsville city limits when he

⊃ 72A
:ev. 8/82)

observed a white Ford F-250 pick-up truck turn onto Pleasant Valley Road. (Tr. at 6-8, 46, 56.) Officer Sutton also turned onto that road and, as his cruiser approached the rear of the truck, the truck's driver sped up and made a hard, erratic left turn without a signal and improperly passed another vehicle. (Id. at 8-9.) Officer Sutton turned on the cruiser's blue lights to conduct a traffic stop. (Id.) Initially, the truck increased its speed, but it eventually stopped after traveling about one mile down a residential street. (Id. at 9.)

Officer Sutton approached the truck, explained to the driver why he had initiated the traffic stop, asked for identification from the driver, Natasha Lee, and from her sole passenger, Defendant, and for the vehicle's registration. (Tr. at 10-11, 32.) Ms. Lee provided Officer

4

Sutton with a driver's license, but could not produce proof of registration for the truck, and Defendant told Officer Sutton his name. (Id. at 11.) Officer Sutton noted that Ms. Lee and Defendant appeared nervous, and that Defendant was sweating despite the cold temperature, 28°F. (Id. at 30, 41, 47, 52.) Officer Sutton returned to his cruiser to verify the information provided by Defendant and Ms. Lee, and police dispatch informed Officer Sutton that the truck had been reported stolen, and that Defendant's driver's license had been suspended due to prior drug charges. (Id. at 11, 13-14, 46, 56.) At that point, the stop had lasted about five minutes, and Officers Michael Gallman and Jonathan Caves,[1] also with the Adairsville Police

---

[1]Officer Caves, who had been hired in November 2010, was in training at the time of the stop. (Tr. at 45-47, 52.) Officer

Ɔ 72A
ᴸev.8/82)

Department, arrived on the scene to assist Officer Sutton. (Id. at 11-12, 15, 44-47, 53, 55-56.)

Officers Sutton and Gallman approached the vehicle, asked Ms. Lee and Defendant to exit the truck, advised Ms. Lee and Defendant that the truck had been reported stolen, handcuffed Ms. Lee and Defendant behind the back, and patted Ms. Lee and Defendant down for weapons. (Tr. at 12, 16, 47, 56-58.) Officer Sutton noted that Defendant did not seem unsteady when he exited the truck. (Id. at 41.) Officer Sutton placed Ms. Lee in the back of his patrol car, and Officers Caves and Gallman escorted Defendant to the back of their patrol car. (Id. at 12, 16, 47, 58.) Officer Caves noted that Defendant appeared nervous and was

_____

Gallman was the most senior officer of the three patrolmen. (Id. at 61.)

Ɔ 72A
ʇev.8/82)

sweating, but was unsure whether Defendant was under the influence of narcotics. (Id. at 47, 52.) Defendant followed Officers Caves' and Gallman's instructions, did not fall in and out of consciousness, and did not get ill or complain of feeling ill; however, Defendant did state that he was hot, and Officer Caves adjusted the temperature of his patrol car to accommodate Defendant. (Id. at 47-48, 50, 52-53, 58, 62.)

Officer Sutton confirmed that the truck matched the description of the vehicle reported as stolen, which included identifying marks, including stickers, a front bumper tag, and possibly a dent or a cracked windshield. (Tr. at 14.) At some point during the traffic stop, Officer Sutton asked Defendant the following questions while Defendant was

7

handcuffed and seated in the back of a patrol car: "Whose truck is this?," "What is this?," and "Anything in the truck I need to know about?" (Id. at 32-33.)[2] In response, Defendant stated, "Anything that's in the truck's mine, it's not Natasha's." (Id. at 32-33, 35.) Officer Sutton asked Ms. Lee similar questions, and she denied knowing what was in the truck. (Id. at 34-35.) During the above events, Officer Sutton did not threaten Defendant, make him any promises, or point a firearm at him, and Officer Sutton did not observe anyone engage in such behavior toward Defendant. (Id. at 26.)

---

[2]It is unclear whether Officer Sutton questioned Defendant before or after the officers conducted an impound search of the truck. (Tr. 33.)

AO 72A
(Rev.8/82)

Because the truck was to be towed and impounded, the officers conducted an inventory search pursuant to Adairsville Police Department policy. (Tr. at 12-14, 16, 29-30, 54-55, 59.) Officer Sutton found a black box containing digital scales, tweezers, and suspected methamphetamine. (Id. at 12-16, 29-31.) Officers Gallman and Caves found drug paraphernalia, marijuana seeds, marijuana, a grinder, an Airsoft gun, and a knife. (Id. at 12, 15-16, 49.) Officer Sutton then seized the above evidence, placed it in the front seat of his patrol car, and transported Ms. Lee to the Adairsville Police Department. (Id. at 16.) At that point, approximately thirty minutes had passed from the initiation of the stop until Officer Sutton left the scene with Ms. Lee. (Id. at 16-17.)

Ɔ 72A
:ev.8/82)

Officers Gallman and Caves waited ten to fifteen minutes for the tow truck to arrive, and then drove Defendant to the police station. (Tr. at 16, 49, 59.) During that time, the officers did not threaten Defendant or make him any promises. (Id. at 49-50, 58; see also id. at 60-61.) According to Officer Gallman, a maximum of thirty-five minutes elapsed between the time that he and Officer Caves arrived at the scene and the time that they delivered Defendant to the police station. (Id. at 60.) Officer Gallman observed Defendant during that time, and noted that Defendant was nervous and sweating; however, Officer Gallman did not believe that Defendant was under the influence of drugs or alcohol. (Id. at 60, 63.)

10

\O 72A
Rev.8/82)

## 2.   Post-Miranda Questioning

When Defendant arrived at the police station, Officer Sutton administered the Miranda rights to Defendant in the booking room; Officers Gallman[3] and Caves, and possibly Ms. Lee, were present.  (Tr. at 17-18, 32, 34, 36, 62.) According to Officer Sutton, Defendant was very nervous, shaky, sweaty, jumpy, jittery, and scratched an apparent itch several times.  (Id. at 25, 31-32, 35, 41, 43.)  It appeared to Officer Sutton that Defendant was under the influence of drugs.  (Id. at 25, 31, 41, 43.)  Defendant, however, followed the officers' instructions, timely responded to their questions, and did not complain of

---

[3]Officer Gallman was present while Officer Sutton administered the Miranda rights to Defendant, but was not paying attention to that process.  (Tr. at 62-63.)

11

feeling ill or state that he was under the influence of drugs. (Id. at 25, 41, 64.) Defendant did not ask to stop the interview, ask for medicine, ask for an attorney, or make any requests of the officers. (Id. at 25-26, 62.)

Officer Sutton provided Defendant with a written statement of the Miranda rights, read them to Defendant, and asked Defendant if he understood those rights. (Tr. at 18-20, 36.) Defendant stated that he did, and it appeared to Officer Sutton that Defendant understood the rights. (Id. at 18-20, 36.) At 8:40 a.m., Defendant signed a "Waiver Certificate," stating that he had a twelfth-grade education, that he understood his Miranda rights, that he waived those rights, and that he was willing to talk about the truck and the drugs found therein. (Id. at 18-21, 36; Gov't Ex. 1.) Officer

12

Sutton also initialed the form. (Gov't Ex. 1.) Although Officers Gallman and Caves also were present, only Officer Sutton questioned Defendant. (Tr. at 21.) During the interview, Defendant had one arm handcuffed to a chair and the other arm free. (Id. at 22.) Defendant appeared to understand Officer Sutton's questions and to answer them willingly, and stated that the drugs were his but that the truck was not stolen. (Id. at 21-22, 36, 42.) The interview lasted approximately two minutes. (Id. at 22.)

At 8:53 a.m, Defendant made the following written statement in Officer Sutton's presence:

> I got the truck Tue. I pad [sic] 1500 for the truck. I got the truck from Richy. I got the title for the truck. The drugs is mine not Tasha. The guns are not mine they where lift [sic] in the back of the truck. They are not mine [or] Tasha and I did not still [sic] the truck. God hope.

13

(Gov't Ex. 2; Tr. at 22-25, 36.) On the Voluntary Statement form, Defendant initialed a paragraph warning him that he could be held liable for any false information provided therein. (Tr. at 24.) Defendant made the above written statement approximately fifteen minutes after arriving at the police station. (Id. at 25.) While at the police station, Officer Sutton did not threaten Defendant, make Defendant any promises, or point a firearm at Defendant, and Officer Sutton did not observe anyone engage in such behavior toward Defendant. (Id. at 27.)

### 3. Agent Mueller

After Defendant's arrest, a lieutenant with the Adairsville Police Department contacted Drug Enforcement Administration Special Agent ("SA") Christopher A. Mueller

AO 72A
Rev.8/82)

to request that Defendant be prosecuted in federal court. (Tr. at 65-67.) SA Mueller has worked for the DEA since 1998. (Id. at 66.) Although SA Mueller did not observe or interact with Defendant during or immediately after the arrest at issue, he provided a lay opinion at the August 11, 2011 hearing as to the various side effects of methamphetamine. (Id. at 66-73.)

SA Mueller testified that an individual's reaction to a drug varies depending on his tolerance to it, which is built up by usage, and the length of time that the individual has been using the drug, both during his lifetime and during a specific period. (Tr. at 67-68.) According to SA Mueller, an individual under the influence of methamphetamine will exhibit paranoia, will often groom himself or be attentive to

15

a specific item, and often will not be able to react to outside stimuli as a normal person would. (Id. at 68-70.) SA Mueller testified that an individual who uses methamphetamine, but who is not presently under the influence, will exhibit the some of those behaviors. (Id. at 68.) Such an individual, however, will interact with others more easily than someone who is under the influence of methamphetamine. (Id. at 68-69.) In SA Mueller's experience, someone who is able to follow instructions and comply with directions is likely not under the influence of drugs. (Id. at 70.)

SA Mueller acknowledged that sweating in cold weather could indicate that an individual is under the influence of drugs. (Tr. at 72.) Likewise, SA Mueller

admitted that a person who groomed himself frequently, who was sweaty, who was jittery, and who was constantly scratching himself could possibly be under the influence of drugs.  (Id. at 73.)

## B.  Procedural Background

On May 2, 2011, a federal grand jury sitting in the Northern District of Georgia returned a single-count Indictment with a forfeiture provision against Defendant. (Docket Entry No. 1.)  The Indictment alleges that, on January 27, 2011, Defendant knowingly possessed, with intent to distribute, methamphetamine, in violation of 18 U.S.C. § 2 and 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(viii).  (Id. at 1.)

17

On June 28, 2011, Defendant filed his Motion to Suppress Statements. (Docket Entry No. 13.) On August 11, 2011, Judge Johnson held an evidentiary hearing on the Motion to Suppress. (Docket Entry Nos. 16, 18.)

On October 21, 2011, Judge Johnson issued his Non-Final Report and Recommendation. (Docket Entry No. 22.) Judge Johnson recommends that the Court grant in part and deny in part the Motion to Suppress. (Id.)

Defendant has filed Objections to the Non-Final Report and Recommendation. (Docket Entry No. 24.) The Court finds that no response from the Government is necessary. The time period in which the Government could file Objections has expired, and the Court therefore concludes that this matter is ripe for resolution by the Court.

18

## III. Discussion

### A. General Standards Governing Admissibility

Before a defendant's confession or self-incriminating statements may be presented to a jury, a defendant has a constitutional right to a fair hearing and an independent and reliable determination of the voluntariness of those statements. Jackson v. Denno, 378 U.S. 368, 376-77 (1964). Under 18 U.S.C. § 3501(a), "the trial judge shall, out of the presence of the jury, determine any issue as to voluntariness." United States v. Davidson, 768 F.2d 1266, 1270 n.1 (11th Cir. 1985) (explaining that § 3501(a) codified Jackson v. Denno requirement for criminal prosecutions).

In Miranda v. Arizona, 384 U.S. 436 (1966), the Supreme Court noted that, "when an individual is taken into

AO 72A
Rev.8/82)

custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, the privilege against self-incrimination is jeopardized." 384 U.S. at 478. The Court consequently held that the procedural safeguard of warning the suspect of his constitutional rights must be instituted to protect the privilege. Id. at 478-79. Those so-called Miranda warnings "are required before any statement may be admitted into evidence at trial which was elicited from a person in custody through interrogation." Endress v. Dugger, 880 F.2d 1244, 1248 (11th Cir. 1989).

A two-part inquiry determines whether a confession or self-incriminating statement is admissible. First, the court must determine whether the Miranda waiver is valid. A

ﾍ
'82)

defendant has validly waived his Miranda rights only if the totality of the circumstances show both that: (1) the defendant made an uncoerced choice and (2) the defendant had an awareness "of both the nature of the right being abandoned and the consequences of the decision to abandon it." Moran v. Burbine, 475 U.S. 412, 421 (1986).

Second, even if the Government has complied with Miranda's requirements, a court must consider whether the Defendant's confession or self-incriminating statement was voluntary. United States v. Jones, 32 F.3d 1512, 1516 (11th Cir. 1994) (per curiam); United States v. Sims, 719 F.2d 375, 378 (11th Cir. 1983) (per curiam). To determine whether a defendant's statements were voluntary, the court must examine the "totality of the circumstances, including

21

the details of the interrogation and the defendant's characteristics." <u>United States v. Bernal-Benitez</u>, 594 F.3d 1303, 1319 (11th Cir. 2010). The goal of this inquiry is to determine whether police overreached, considering factors such as "the [accused's] lack of education, or his low intelligence, the lack of any advice to the accused of his constitutional rights, the length of detention, the repeated and prolonged nature of the questioning, and the use of physical punishment such as the deprivation of food or sleep." <u>Id.</u> (internal quotations and citations omitted) (alteration in original).

## B. Application to this Case

The Court first examines whether Defendant was subject to custodial interrogation at the traffic stop. If

\
82)

Defendant was subjected to a custodial interrogation at the traffic stop, a Miranda warning was required for Defendant's first statement to be admissible. The Court next examines whether Defendant made a knowing, intelligent, and voluntary waiver of his Miranda rights at the police station before giving his second statement.

## 1. Traffic Stop Statement

Miranda warnings are required where an individual is both in custody and subject to interrogation. Miranda, 384 U.S. at 477-78.[4] For Fifth Amendment purposes, the inquiry for "in custody" status is whether, "under the totality of the

---

[4]In New York v. Quarles, 467 U.S. 649 (1984), the Supreme Court recognized a narrow exception to the requirements of Miranda where there is an immediate safety threat to the officers or the public. 467 U.S. at 657-58. The Government does not argue that the public safety exception applies here.

Ɔ 72A
ƚev.8/82)

circumstances, a reasonable man in the suspect's position would feel a restraint on his freedom of movement fairly characterized as that degree associated with a formal arrest to such extent that he would not feel free to leave." United States v. Muegge, 225 F.3d 1267, 1270 (11th Cir. 2000) (per curiam) (internal citations and quotations omitted). Interrogation is defined as express questioning or the functional equivalent–"any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response." Rhode Island v. Innis, 446 U.S. 291, 300-01 (1980).

The Court agrees with Judge Johnson that Officer Sutton obtained Defendant's first statement in a custodial

24

interrogation. (Non-Final Report & Recommendation at 14.)

As Judge Johnson noted:

> Shortly after Officer Sutton initiated the traffic stop, the officers told [D]efendant that the truck had been reported as stolen, asked him to exit the truck, handcuffed him behind the back, and placed him in the rear seat of a police cruiser separate from Ms. Lee. Under those circumstances, [Defendant] was in custody, as a reasonable person would have concluded that his freedom of movement was restrained to the degree associated with formal arrest. See United States v. Young, 377 F. App'x 965, 969 (11th Cir. 2010) (holding that defendant "handcuffed and secured in . . . police cruiser" was clearly in custody). Moreover, after telling [D]efendant that the truck has been reported stolen, Officer Sutton should have known that posing questions such as, "Whose truck is this?," "What is this?," and "Anything in the truck I need to know about?" (Tr. 32-33), likely would elicit an incriminating response.

25

(Id. at 14-15.) The Court agrees with Judge Johnson that Defendant clearly was in custody when he made the statement in the patrol car.

As previously noted, Defendant was in custody when he made the statement at the scene of the traffic stop. The officers had not advised Defendant of his Miranda rights when he made that statement. Under those circumstances, the Court agrees with Judge Johnson that Defendant's statement at the scene of the traffic stop is inadmissible. (Non-Final Report & Recommendation at 15.) The Court therefore adopts this portion of the Non-Final Report and Recommendation, grants this portion of Defendant's Motion

26

to Suppress Statements, and suppresses the statement that Defendant made at the scene of the traffic stop.[5]

## 2. Defendant's Statement at the Police Station

Defendant does not deny that Officer Sutton provided him with a Miranda warning before Defendant's custodial interrogation at the police station. Defendant, however, argues that his statement at the police station was involuntary and was obtained by "coercion." According to Defendant, he had already made an unwarned admission to Officer Sutton at the traffic stop, and he was intoxicated during both interrogations.

---

[5]Not surprisingly, Defendant does not object to this portion of the Final Report and Recommendation. (Def.'s Objs. at 2 ("As to this recommendation, for obvious reasons, [Defendant] has no objection.").

AO 72A
(Rev.8/82)

In <u>Oregon v. Elstad</u>, 470 U.S. 298 (1985), the Supreme Court rejected the defendant's contention that a second, warned confession must be suppressed because officers failed to give the defendant his Miranda rights prior to obtaining his first confession. 470 U.S. at 302, 309. The Supreme Court explained that it would be an "unwarranted extension of *Miranda* to hold that a simple failure to administer the warnings, unaccompanied by any actual coercion or other circumstances calculated to undermine the suspect's ability to exercise his free will, so taints the investigatory process that a subsequent voluntary and informed waiver is ineffective for some indeterminate period." <u>Id.</u> at 309. "<u>Elstad</u> sets out the general rule that the existence of a pre-warning statement does not require

28

suppression of a post-warning statement that was knowingly and voluntarily made." <u>United States v. Street</u>, 472 F.2d 1298, 1312 (11th Cir. 2006) (citing <u>Elstad</u>, 470 U.S. at 309). With that standard in mind, the Court determines whether Defendant's statement at the police station was the product of an uncoerced choice.

The Court agrees with Judge Johnson that "[t]here is no evidence that the officers coerced [D]efendant into making his first statement, signing the Waiver Certificate, or making his second statement." (Non-Final Report & Recommendation at 16.) As Judge Johnson noted, "[t]he hearing testimony reflects that none of the officers made any threats or promises to [D]efendant, or brandished a weapon in his presence either at the traffic stop, during

29

transport, or at the police station." (Id.) Indeed, as Judge Johnson recognized, before questioning Defendant at the police station, "Officer Sutton orally provided a Miranda warning to [Defendant] and presented him with a written statement of those rights before [D]efendant waived them." (Id.)

The Court also agrees with Judge Johnson that "there is no indication that Officer Sutton deliberately used a two-step interrogation strategy to circumvent Miranda." (Non-Final Report and Recommendation at 16-17 (collecting cases).) Instead, Officer Sutton's questioning of Defendant at the traffic stop was brief and general. (Id. at 17.) Additionally, the Court agrees with Judge Johnson that: "Whether [D]efendant was intoxicated at the time is

30

irrelevant to the issue of coercion." (Id.) Nothing in Defendant's Objections changes that result.

For the reasons discussed above, the Court agrees with Judge Johnson that Defendant's decision to waive his Miranda rights before making the statement at the police station was not coerced. Judge Johnson therefore correctly found that the statement satisfied the first Miranda prong.

The Court next must address the second Miranda prong. Under this prong, the test of whether a person is too affected by alcohol, drugs, or pain to make a knowing, intelligent, and voluntary waiver of his Miranda rights is one of coherence and an understanding of what is happening. See United States v. Martin, 434 F.2d 275, 279 (5th Cir.

2)

1970)[6] (holding confession properly admissible where evidence supported finding that, although defendant had been drinking and was affected by alcohol to some degree, "his faculties were not so impaired that he did not understand what was going on nor was he incoherent"); see also United States v. Adamson, No. 04-672, 2008 WL 167299, at *7 (E.D. Pa. Jan. 16, 2008) (collecting circuit court cases focusing on defendant's coherence and comprehension, and finding that anxiety and pain medication did not impair defendant's ability to make valid Miranda waiver).

---

[6]Opinions of the United States Court of Appeals for the Fifth Circuit issued prior to October 1, 1981, the date marking the creation of the United States Court of Appeals for the Eleventh Circuit, are binding precedent on this Court. Bonner v. City of Prichard, 661 F.2d 1206, 1209-11 (11th Cir. 1981) (en banc).

Ɔ 72A
ʲev.8/82)

The Court agrees with Judge Johnson that, "despite [Defendant's] alleged intoxication, the hearing testimony supports a finding that he was coherent and cognizant of the situation when he waived his Miranda rights and spoke with Officer Sutton." (Non-Final Report & Recommendation at 18.) As Judge Johnson noted:

> [Defendant] was able to interact with the officers, providing his name to Officer Sutton, following instructions to exit the truck, telling Officer Caves he was hot when placed into the patrol car, and responding timely and appropriately to Officer Sutton's instructions and questions both at the traffic stop and at the police station. Although [Defendant] was nervous, jittery, itchy, and sweaty, he was not unsteady and did not fall in and out of consciousness or complain of feeling unwell or being intoxicated.

(Id.)[7]

---

[7]In his Objections, Defendant argues "that the first un-Mirandized interrogation (leading to a confession) and the police

Additionally, after Officer Sutton administered the Miranda rights, Defendant stated that he understood his rights and signed a Waiver Certificate stating that he was willing to talk about the truck and drugs. (Tr. at 18-21; Gov't Ex. 1.) The Court agrees with Judge Johnson that "Defendant's express oral and written statement waiving those rights is 'strong proof of the validity of that waiver.'" (Non-Final Report & Recommendation at 18-19 (citing North Carolina v. Butler, 411 U.S. 369, 373 (1979)).) As Judge Johnson also pointed out, Defendant could focus on

---

officer's conclusion that [Defendant] was intoxicated when they rushed him into the interrogation room before he had a chance to sober up, combined to undermine his ability to exercise his free will in response to the police's [sic] request that he waive his Miranda rights and render a second confession." (Def.'s Objs. at 4.) The Court finds this contention to be without merit, because nothing in the record supports it.

34

Officer Sutton's questions at the police station, and managed to produce a coherent and responsive hand-written statement immediately following that interview. (Id. at 19 (citing Gov't Ex. 2).) Further, as Judge Johnson noted, Defendant initialed a statement indicating that Defendant would be liable for any false information provided on the form. (Id.)

Judge Johnson properly accepted Officer Sutton's testimony that Defendant appeared to be under the influence of drugs, as well as SA Mueller's testimony that narcotics have varying effects on people depending on their individual drug history.[8] (Non-Final Report &

---

[8]Defendant objects to any weight given to SA Mueller's testimony concerning typical manifestations of methamphetamine use, arguing that SA Mueller was not present on the day in question and had no opportunity to observe Defendant, and that the

) 72A
ev.8/82)

Recommendation at 19.) The Court agrees with Judge Johnson that "there is no probative evidence that [Defendant] had insufficient mental capacity to understand his Miranda rights and the consequences of waiving them, or to voluntarily waive those rights." (Id.) As Judge Johnson noted: "Without more, [Defendant's] contention that he was intoxicated at the time does not invalidate his Miranda waiver or make his second statement involuntary." (Id. at 19-20 (collecting cases).) Judge Johnson also correctly noted that "there is no evidence of police

---

Government impermissibly assumes that methamphetamine was the source of Defendant's intoxication. (Def.'s Objs. at 5.) The Court finds that Judge Johnson did not abuse his discretion in considering SA Mueller's testimony on this point. In any event, even if the Court disregarded SA Mueller's testimony, nothing indicates that Defendant had insufficient mental capacity to understand his Miranda rights and the consequences of waiving those rights. The Court therefore overrules this Objection.

36

overreaching during the interrogation at the police station."

(Id. at 20.)[9]   Further, as Judge Johnson recognized, "Defendant indicated that he had a twelfth-grade education, did not make any requests of the officers during the two-minute interview, and made his second statement less than an hour after Officer Sutton initiated the traffic stop." (Id.) Under those circumstances, Judge Johnson correctly found that the second prong of Miranda was satisfied.

In sum, the Court agrees with Judge Johnson that, considering the totality of the circumstances, Defendant made an uncoerced, knowing, and voluntary waiver of his

---

[9]Once again, the Court rejects Defendant's contention that the first un-Mirandized interrogation undermined Defendant's ability to exercise his free will in response to the officers' request that Defendant waive his Miranda rights and make a second confession.

!A
!/82)

Miranda rights, followed by a voluntary statement to Officer Sutton. The Court consequently adopts this portion of the Non-Final Report and Recommendation, overrules Defendant's Objections, and denies the portion of the Motion to Suppress relating to Defendant's statement made while at the police station.

## IV. Conclusion

ACCORDINGLY, the Court **ADOPTS** the Non-Final Report and Recommendation of United States Magistrate Judge Walter E. Johnson [22], **OVERRULES** Defendant's Objections to the Final Report and Recommendation [24], and **GRANTS IN PART AND DENIES IN PART** Defendant's Motion to Suppress Statements [13]. The Court **GRANTS** the Motion to Suppress with respect to

38

Defendant's pre-Miranda statement made at the traffic stop, but **DENIES** the Motion to Suppress with respect to Defendant's post-Miranda statement made at the police station.

IT IS SO ORDERED, this the 10 day of November, 2011.

_____
UNITED STATES DISTRICT JUDGE

AO 72A
Rev.8/82)